## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **EARL PETERS, IDDO BLACKWELL,** | * | **CIVIL ACTION** |
| **KEVIN MATHIEU, LAVELLE** | * | |
| **MEYERS, DAN RILEY, RUSSELL** | * | |
| **WARE** | * | **NUMBER: 3:16-cv-00842-SDD-RLB** |
| | * | |
| **VERSUS** | * | |
| | * | **JUDGE SHELLY D. DICK** |
| **RAMAN SINGH, JOHN BEL** | * | |
| **EDWARDS, JAMES M. LEBLANC,** | * | |
| **STEPHANIE LAMARTINIERE,** | * | **MAGISTRATE** |
| **DARRYL VANNOY, STATE OF** | * | **RICHARD L. BOURGEOIS** |
| **LOUISIANA, LOUISIANA** | * | |
| **DEPARTMENT OF PUBLIC SAFETY** | * | |
| **AND CORRECTIONS** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT TO DISMISS ALL CLAIMS OF WALLACE BREAUX

NOW INTO COURT, through undersigned counsel, come Defendants, State of Louisiana, Louisiana Department of Public Safety and Corrections, John Bel Edwards, in his capacity as Governor of Louisiana, James LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections, Darryl Vannoy, Warden at Angola, Raman Singh, and Stephanie Lamartinere, Assistant Warden at Angola, who, pursuant to Federal Rule of Civil Procedure 56, move to dismiss the claims of plaintiff Wallace Breaux.

## I.    FACTUAL BACKGROUND

### 1.    Plaintiff's Complaints and Medical Treatment

At all times pertinent herein, Wallace Breaux was an inmate sentenced to the custody of the Louisiana Department of Public Safety and Corrections and was confined to the Louisiana State Penitentiary in Angola. Breaux, among other plaintiffs, filed this instant suit against defendants

alleging violations of the Eighth Amendment and Americans with Disabilities Act.

On June 12, 2008, Plaintiff was seen in the Physician's Clinic for follow up of diabetes mellitus type II and high cholesterol and it was noted that Plaintiff had a large abdominal hernia. He was given a Regular Duty With Restrictions duty status with no lifting over 15 pounds, no squatting and no bending for one (1) year.[1] There are no other mentions of a hernia in plaintiff's medical records until June 30, 2011, where Plaintiff was seen in the Physician's Clinic for follow up regarding an upper respiratory infection, plantar's wart and T. Pedis and the physician requested a referral to the Surgery Clinic for a ventral hernia.[2] That same day, June 30, 2011, a Consultant Referral Form was filled out requesting that Plaintiff, who had a ventral hernia, be evaluated.[3]

On September 1, 2011, Plaintiff was seen in the Physician's Clinic for follow up of epididymitis, diabetes mellitus, COPD, GERD and was noted to have a ventral hernia. Plaintiff requested a duty status for COPD/hernias and was advised to follow up in the clinic in 3 months.[4] On October 22, 2011, Plaintiff was seen at the Earl K. Long Surgery Center and an order was placed for a CT Scan for a possible hernia.[5] On November 14, 2011, Plaintiff was seen at the Earl K. Long Medical Center Radiology Department for the CT scan. The radiologist noted a mesenteric or fatty herniation of the left inguinal region with no evidence of hiatal hernia.[6]

---

[1] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015926;

[2] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015896;

[3] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015895;

[4] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015856;

[5] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015853;

[6] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #016441;

On December 1, 2011, Plaintiff was again seen in the Physician's Clinic for follow up of COPD and epididymitis and Plaintiff was noted to have a inguinal hernia with a plan to follow up with General Surgery.[7] On January 21, 2012, Plaintiff was seen by general surgery  and was complaining of upper abdominal wall pain for two (2) years and it was noted that Plaintiff had an Inguinal Hernia.  The plan was for Plaintiff to undergo a C-Scope (diagnostic colonoscopy) and to return to clinic after the C-Scope to schedule surgery.[8]

On January 26, 2012, Plaintiff was again seen in the Physician's Clinic for follow up of cut on his penis, diabetes mellitus, COPD, GERD, and a inguinal hernia was noted.[9] A March 7, 2012, visit to the Physician's Clinic noted that Plaintiff was following up for hyperlipidemia, diabetes mellity, asthma, GERD, right carpal tunnel syndrome, upper respiratory infection. It was noted that plaintiff had a positive CT for a right inguinal hernia.[10]

On June 6, 2012, plaintiff was seen at the Physician's Clinic for his hernia.  Plaintiff was awaiting the C-Scope and was to return to clinic after the scope.  It was noted that the referral for the scope would be resent.[11]

On June 6, 2012, the Earl K. Long Surgery Center ordered a consult with the Gastroenterology department due to Plaintiff having a family member with colorectal cancer. Plaintiff was noted to have an inguinal hernia and his father had colon cancer.  The surgeon

---

[7] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015850;

[8] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015841;

[9] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015840;

[10] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015829;

[11] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015823;

requested another C-scope prior to the repair of his inguinal hernia.[12]

On June 19, 2012, Eceptionist Record noted that Plaintiff had a family history of colorectal cancer and the Plaintiff was seen in 2006 by a gastroenterology doctor who recommended a repeat scope three (3) years later. Plaintiff was required to have another C-Scope prior to surgery for repair of the hernia. According to a note on the Eceptionist Record dated July 16, 2012, the referral was reviewed and denied by the outside Gastroenterology Department as Plaintiff's medical condition did not meet criteria for an appointment at that time due to Earl K. Long Clinic capacity.[13]

On September 26, 2012, plaintiff was seen at the Physician's Clinic for follow up of hyperlipidemia, diabetes mellitus, asthma, GERD and it was noted the presence of a inguinal hernia and advised that plaintiff had seen the Surgery Clinic and was awaiting the C-Scope prior to repair of the hernia.[14] Plaintiff was again seen at the Physician's Clinic on January 11, 2013 for follow up of right carpal tunnel syndrome, diabetes mellitus, asthma and T. Pedis with the physician noting that Plaintiff has a inguinal hernia and family history of colon cancer. Plaintiff was due for a C-Scope after which he would be able to have the hernia surgery.[15]

Plaintiff was seen in the RE. Barrow, Jr. Treatment Center on August 21, 2013 for follow up of hypertension, hyperlipidemia, diabetes mellitus, chronic kidney disease and requested a duty status

---

[12] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015820;

[13] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015817-015818;

[14] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015811;

[15] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015806;

review for his hernia.[16] There were no other mentions of plaintiff's hernia in 2013. Plaintiff was scheduled for an appointment at the Physician's Clinic on February 24, 2014, but refused to accept medical care, stating he was not going to stay all day and not see a doctor.  Plaintiff left the clinic without treatment.[17] Plaintiff was seen on March 31, 2014, at the Physician's Clinic for a follow up of hypertension, hyperlipidemia, diabetes mellitus, chronic kidney disease and hernia surgery evaluation and was noted to have a left inguinal hernia, ventral hernia and right inguinal hernia.  He was advised to return to clinic in four months and the physician also requested a duty status review.[18]

On September 3, 2014, Plaintiff was seen in the Physician's Clinic for follow up of hypertension, hyperlipidemia, chronic kidney disease, and right carpal tunnel syndrome.  Plaintiff was complaining of pain in left abdomen and was noted to have a left inguinal hernia and a ventral hernia.  Plaintiff was ordered to return to clinic in six months with a duty status of no lifting over ten pounds as well as no right upper quadrant overhead work.[19] On January 31, 2015, Plaintiff was seen in the Physician's Clinic for follow up of hypertension, hyperlipidemia, chronic kidney disease, right greater than left carpal tunnel syndrome and the left inguinal hernia was noted to be small and reducible.[20]

On May 28, 2015, Plaintiff was seen in the Physician's Clinic for hernia review which was

---

[16] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015794;

[17] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015780-015781;

[18] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015779;

[19] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates # 015763;

[20] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015754;

not visual upon inspection secondary to habitus (large build).  The exam of the hernia was small with no scrotal involvement.  The hernia was rated as a 2.5/5.  Plaintiff was also noted to have rectus diastasis.  The plan was to continue management per guidelines.[21]

On June 8, 2015, Plaintiff was seen in the Physician's Clinic for follow up of hernia, rectus diastasis, diabetes mellitus, hyperlipidemia, right shoulder rotator cuff tear, right carpal tunnel syndrome, hypertension and chronic kidney disease.  He was assigned permanently to the bottom bunk.[22]  On August 10, 2015, Plaintiff visited the Physician's Clinic for follow up of diabetes mellitus, hyperlipidemia, right rotator cuff tear, right carpal tunnel syndrome and was noted to have a hernia and rectus diastasis.  He was cleared for rotator cuff repair and was ordered to return to clinic in four (4) months.[23]  Plaintiff underwent shoulder surgery on August 18, 2015 at University Medical Center New Orleans, specifically right shoulder arthroscopy, right distal clavicle excision and right subacromial decompression.[24]

Plaintiff's Hernia Review appointment at the Physician's Clinic on September 29, 2015, noted that the hernia was not identifiable with visual inspection secondary to habitus.  The right inguinal hernia was small with no scrotal involvement and was rated 2/5.  The plan was to manage per guidelines.[25]  Plaintiff was seen on February 3, 2016, at the Physician's Clinic for follow up of

---

[21] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015738;

[22] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015736;

[23] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015728;

[24] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #019424;

[25] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015727;

hernia , right shoulder, hypertension, hyperlipidemia, diabetes mellitus, rotator cuff tear and COPD. Plaintiff was status post shoulder decompression of September 15, 2015.[26] There were no other complaints of a hernia in 2016. Plaintiff was seen on March 2, 2017 at the Physician's Clinic and was given duty status of Regular Duty With Restrictions, no lifting over 15 pounds, no sports and no rodeo for six (6) months.  The physician also requested that Plaintiff be seen in the Hernia Clinic, and plaintiff was prescribed Naproxen.[27] The same day, Consultant Referral Form referred plaintiff to be evaluated by Dr. Lavespere for his  hernia.[28] On June 26, 2017, Dr. Bruce Barron performed a left eye cataract extraction on plaintiff at University Medical Center New Orleans with no complications.[29]

On September 21, 2017, plaintiff saw Dr. Lavespere for hernia review. The notes indicate that there was no obvious hernia and no scrotal edema. It was noted that there was an obvious disruption in linea alba and the protrusion was evident when raising feet off of the floor while supine. It was noted that plaintiff had rectus diastasis. Dr. Lavespere informed plaintiff that his condition did not usually warrant surgery, but because of pain he would refer plaintiff to Dr. Morrison for a surgical evaluation.[30]

On November 20, 2017, plaintiff was seen in the General Surgery Clinic for rectus diastasis and right inguinal hernia. It was noted that the hernia was occasionally painful. The plan was to

---

[26] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015689;

[27] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015666;

[28] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #015665;

[29] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #022875;

[30] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #021188;

repair.[31] On December 6, 2017, plaintiff underwent an elective right inguinal hernia repair.[32]

## 2.    Hernia Policy

In 2013, Earl K. Long, the charity hospital that performed surgeries for those inmates in the custody of the Department of Corrections ("DOC"), was shut down, forcing the DOC to redesign the medical system.[33] The DOC runs an integrated healthcare delivery system. Each prison, LSP in this case, provides the primary care providers for the inmates. Because the prisons state wide do not have operating rooms or surgeons at their facilities, DOC contracts with hospitals to provide surgery to inmates.[34] The surgeon at the particular hospital ultimately decides whether a prisoner requires surgery.[35] As a result of limited capacity and operating rooms at each hospital across the state, the DOC is charged with prioritizing the need.[36] After the redesign, DOC's first priority was to maintain access to emergency medical care, to include life threatening hernias.[37] As a result, in order to effectively prioritize the need, the DOC put together a group of doctors to promulgate guidelines for hernias.[38] Prevailing medical opinion is that a reducible hernia, with no other issues related to

---

[31]  Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #022820;

[32]  Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates #022809-022810;

[33]  Exhibit B, Deposition of Dr. Raman Singh, p. 23;

[34]  Exhibit B, Deposition of Dr. Raman Singh, p. 17-18;

[35]  Exhibit B, Deposition of Dr. Raman Singh, p. 126, 167, 205;

[36]  Exhibit B, Deposition of Dr. Raman Singh, p. 181;

[37]  Exhibit B, Deposition of Dr. Raman Singh, p. 56;

[38]  Exhibit B, Deposition of Dr. Raman Singh, p. 51.

incarceration, strangulation or significant pain, does not require immediate surgery.[39] Thus, reducible hernias, which do not pose a immediate threat to a patient, were not considered emergency surgeries.[40]

The policy in question was based on prioritizing the needs of inmates across the state due to availability of operating rooms.[41] As a result, during the transition period in 2013, surgeries for reducible hernias with no other significant issues were momentarily put on hold. After the transition, the Hernia Guidelines were put in place. Per the Guidelines, a physician should refer an inmate for surgical consultation if the hernia is not reducible, the hernia is large in size and failing medical management, there are signs of incarceration, or significant pain requiring narcotics or pain management.[42] Thus, if an inmate's hernia was reducible, but there was some other issue, such as failing medical management, significant pain, etc., a physician could refer the inmate for a surgical evaluation. Even during the transition, if an inmate's hernia did not meet the guideline, but the physician felt like the inmate needed a surgical consult, the physician could provide that information to DOC and the surgeon and request an evaluation.[43] This was not a one-size-fits-all policy, and medical judgment prevailed.

Once the doctor at LSP refers an inmate for surgical consultation, the surgeon at the outside hospital determines whether surgery is required. The surgeon will schedule the surgery and LSP will

[39] Exhibit B, Deposition of Dr. Raman Singh, p. 51-52;

[40] Exhibit B, Deposition of Dr. Raman Singh, p. 53;

[41] *Id.*

[42] Exhibit C, Hernia Guidelines;

[43] Exhibit B, Deposition of Dr. Raman Singh, p. 114-115;

make transportation arrangements.

Contrary to plaintiffs' allegations, the DOC did not "decline" surgeries. Plaintiffs point to notes on Eceptionist records, DOC's program used to manage referrals to outside hospitals, that read "declined by HQ." However, the former medical and metal health director of DOC,  Dr. Singh, explained that initially Eceptionist did not have a way to keep a referral request pending.[44] Therefore, if DOC required additional information, the program would generate a "declined by HQ" note. DOC was not declining surgeries; its focus was prioritizing the need. Therefore, taking into account the medical literature, and meeting with surgeons, the guidelines were implemented in order to prioritize the care. Under those guidelines, non reducible hernia with no other issues would be manage non-operatively.

Judge John DeGravelles of this Middle District has held that this exact policy is not unconstitutional.  See *Davis v. Singh*, No. 16-0552, attached as Exhibit D. Only during the transition period in 2013 did DOC place a hold on surgeries, and only based on prevailing medical opinion and the need to prioritize medical care due to the shutdown of Earl K Long and the medical system redesign.

## II.    LAW AND ARGUMENT

### 1.    Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *Robinson v. Wheeler*, 338 F. App'x 437, 438 (5th Cir. 2009); See also F.R.C.P. 56.  A genuine issue of material fact exists if the evidence is

---

[44] Exhibit B, Deposition of Dr. Raman Singh, p. 102-106;

such that a reasonable jury could return a verdict in favor of the nonmoving party. Once the moving party has demonstrated the absence of a material fact issue, the non-moving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Boudreaux v. Swift Transpo. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005). This burden is not satisfied by some metaphysical doubt as to the material fact, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Id.*

Applying the summary judgment standard warrants a dismissal of plaintiff's claims. There are no genuine issues of fact that plaintiff's disagreement with his medical care does not constitute deliberate indifference, and that plaintiffs does not have a claim under the ADA. Defendants are entitled to judgment as a matter of law.

### 2.    Plaintiff's Claims are Prescribed

Because there is no federal statute of limitations for claims brought pursuant to 42 U.S.C. § 1983 or the ADA, a federal court must borrow the forum state's general personal injury limitations period for such claims. *Owens v. Okure,* 488 U.S. 235, 240 (1989); *Brockman v. Texas Dep't of Criminal Justice,* 397 F. App'x 18, 21 (5th Cir. 2010). In Louisiana, the applicable period of limitations is one year. La. Civ.Code Art. 3492. Further, in both the § 1983 and ADA contexts, the Fifth Circuit has held that even if state law provides the underlying limitations period, federal law establishes the date upon which claims accrue, which is " 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.' " *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir.1992); *Brockman v. Texas Dep't of Criminal Justice*, 397 F. App'x 18, 22 (5th Cir. 2010). A plaintiff need not realize that a legal cause of action exists but must only have knowledge of the facts that support a claim. *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995).

Here, plaintiff alleges that he was diagnosed with a hernia in 2012, and that he was denied surgery due to defendants' "No Reducible Hernia Surgery" policy . R.Doc. 56 ¶ 55. While plaintiff would go years without any complaints regarding his hernia, in 2015, he was seen in the clinic for his hernia review. The medical records indicate that the hernia was rated a 2/5 and that the plan was to continue to manager per guidelines. Therefore, at least by September 29, 2015, plaintiff knew, or had reason to know, the alleged injury which is the basis for this action. As such, this suit filed in 2017 is prescribed. Even further, the temporary policy subject of this suit was only implemented from 2013-2014.[45]  Thus, any claim concerning the hernia policy is prescribed.

While plaintiff may argue that prescription was tolled, it is generally recognized that the continuing tort doctrine is inapposite in the context of claims of deliberate medical indifference where an inmate's complaints have been consistently responded to and where care has been provided, albeit not the care that the inmate desired. See *Nottingham v. Richardson*, 499 Fed. Appx. 368, 375 (5th Cir. 2012); *Grumbles v. Livingston*, 706 Fed. Appx. 818 (5th Cir. 2017). In *Nottingham*, for example, the Fifth Circuit addressed an inmate's claim of "inadequate medical care" and found that "each instance of potentially deliberate indifference ceased when he received medical attention." Further, because Nottingham had been seen and evaluated by paramedics on numerous occasions and had been provided with treatment and medication, "[t]here was no continuing denial of medical care and thus no continuing tort." Cf., *Cook v. Louisiana Workforce*, L.L.C., 2017 WL 4322412 (M.D. La. Sept. 28, 2017).

See also *McBarron v. Federal Bureau of Prisons*, 332 Fed. Appx.961 (5th Cir. 2009) (finding no error in lower court's determination that plaintiff's claim regarding non-treatment of his hernia

---

[45] Deposition of Dr. Raman Singh;

were prescribed, finding that the plaintiff "must, because of his ongoing health problems, have been aware at or near the time of the events of any inadequacy of his medical care"); *Smith v. Lavespere*, 2014 WL 4063927, *3 (M.D. La. Aug. 15, 2014) (applying one-year limitations period to an inmate's claim regarding a failure to appropriately treat his complaints of hemorrhoids); *Whitmore v. Cain*, 2015 WL 5012121 (M.D. La. Aug. 24, 2015) (rejecting application of the continuing tort doctrine where the inmate plaintiff complained of long-term solitary confinement based upon an alleged policy which the Court found he had sufficient notice of to further investigate).

Here, plaintiff received medical attention concerning his hernia from 2008 when the hernia was diagnosed, to 2017 when surgery was provided.[46] Even though plaintiff would go several years without any complaints concerning his hernia, Angola continued to treat plaintiff for his medical issues, including a past hernia repair, a shoulder surgery, and a cataract surgery. Because plaintiff had been provided with treatment for his hernia, there was no continuing denial of medical care and thus no continuing tort. See *Nottingham v. Richardson*, 499 Fed. Appx. 368, 375 (5th Cir. 2012).

At the very least, any claim concerning medical treatment of alleged denial of medical care that occurred prior to April 29, 2016 is prescribed. Plaintiff filed suit on September 8, 2017. As such, plaintiff is limited to claims occurring during the year preceding that date, i.e. after September 8, 2016. However, the one year statute of limitations was suspended during the pendency of plaintiff's ARP, which remained pending for 132 days (January 18, 2017 to May 30, 2017). See *Harris v. Hegmann*, 198 F.3d 153, 158 (5th Cir. 1999).[47] Thus, plaintiff's claims are limited to events occurring on or after April 29, 2016. See *Davis v. Singh*, No. 16-0552, attached as Exhibit

---

[46] Exhibit A, Affidavit of Dr. Lavespere.

[47] Exhibit G, ARP.

D.

### 3.    Eighth  Amendment Claims

#### A.    Plaintiff's §1983 Claims Fail

##### i.    The policy at issue did not violate plaintiff's constitutional rights

It is well-settled that to prevail on an Eighth Amendment claim for the deprivation of medical care, a prisoner must be able to show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."    *Thomas v. Carter*, 593 Fed. Appx. 338, 342 (5th Cir.2014), citing *Estelle v. Gamble*, 429 U.S. 97 (1976). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue because a prisoner's mere disagreement with his medical treatment, absent exceptional circumstances, does not support a claim of deliberate medical indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir.2006). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. *Bagneris v. Collins*, No. CV 14-0724, 2016 WL 1122995, at *3 (M.D. La. Mar. 7, 2016), *report and recommendation adopted*, No. CV 14-724-SDD-EWD, 2016 WL 1189336 (M.D. La. Mar. 22, 2016). The Fifth Circuit has held that 'deliberate indifference is especially hard to show when the inmate was provided with ongoing medical treatment.' " *Henderson v. Tanner*, No. CV 15-804-SDD-EWD, 2019 WL 885914, at *5 (M.D. La. Feb. 22, 2019), quoting *Fails v. DeShields*, 349 F. App'x 973, 976 (5th Cir. 2009).

Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference"  under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 83930 (1994). A prison official acts with deliberate indifference only if the official (1) "knows that inmates face a substantial risk of serious bodily harm," and (2) "disregards that risk by failing to take

reasonable measures to abate it." *Gobert v. Caldwell*, 463 F.3d at 346, quoting *Farmer v. Brennan*, 511 U.S. at 847.

The deliberate indifference standard sets a very high bar. The plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), quoting *Estelle v. Gamble*, supra. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir.2006), citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993).

In order for a prison official to be found liable under § 1983, the official must be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be shown to be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or respondeat superior is alone insufficient to state a claim under § 1983. In the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. Supervisory liability can be found to exist if a supervisory official implements a policy so deficient that the policy itself may be seen

-15-

to be a repudiation of constitutional rights and may be seen to be the moving force behind a constitutional violation. *Thompkins v. Belt,* 828 F.2d 298 (5th Cir. 1987).

In *Davis v. Singh*, an inmate brought an action against Angola and DOC officials alleging the same hernia policy at issue here violated his constitutional rights.[48] This Court granted defendant's summary judgment, finding that the policy did not violate plaintiff's constitutional rights. This Court noted that the 2013 policy was temporary and was only implemented due to the closure of Earl K. Long. Further, it was undisputed that "not all diagnosed incidences of hernia[s]... warrant surgical intervention, and the fact that a hernia may be easily reducible is one factor that militates in favor of conservative management." It was further noted that inmates are not entitled to the best medical care available or the most expeditious provision of such care. Thus, the policy did not violate the Eighth Amendment and the inmate's case was dismissed.

Numerous federal district and appellate courts throughout the United States have found that institutional policies dictating that reducible hernias should be treated non-operatively were medically and constitutionally appropriate. In *Jones v. Schmidt*, No. CIV.A. 13-685-JJB, 2014 WL 6772493, at *4 (M.D. La. Dec. 1, 2014), this Court noted that courts have often found that a failure to undertake surgical intervention for a reducible hernia is not deliberate indifference to a serious medical need, citing *Clark v. Adams*, 233 Fed. Appx. 400 (5th Cir.2007) (upholding the dismissal, as frivolous, of an inmate's claim regarding a failure to provide surgical intervention for a reducible hernia) and *Mesa v. Kasule*, 2013 WL 2151706 (E.D.Tex. May 15, 2013) (dismissing an inmate's claim regarding non-surgical treatment of his hernia as frivolous). See also *Cullum v. Texas Dep't of Criminal Justice*, 375 F. App'x 417, 419 (5th Cir. 2010)(upholding the granting of summary

---

[48] *Davis v. Singh*, No. 16-0552, attached as Exhibit D;

judgment as to plaintiff's deliberate indifference claim where the delay in hernia surgery was two and one-half years); *Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006)(finding that doctor's decision to treat inmate's reducible hernia by non surgical means was not deliberate indifference); *Hamby v. Hammond*, 821 F.3d 1085, 1094 (9th Cir. Wash. 2016)( finding that treatment of hernia by non-surgical means did not violate inmate's clearly established rights); *Brown v. Beard*, 445 Fed.Appx. 453, 455–56 (3rd Cir.2011) (per curiam) (holding prison medical personnel did not violate Eighth Amendment when they refused to authorize surgery for prisoner's reducible hernia, instead prescribing pain medication and abdominal belt, plus monitoring, and despite another doctor's opinion that surgery was warranted); *Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008)(classifying hernia surgery as elective did not violate inmate's Eighth Amendment rights); *Rossi v. Nevada Dep't Of Corr.*, 390 F. App'x 719, 720 (9th Cir. 2010)(upholding granting of summary judgment dismissing inmate's deliberate indifference claims for failure to receive hernia surgery).

The policy at issue does not constitute deliberate indifference because controlling medical opinion provides that reducible hernias do not have to be treated surgically. Plaintiff's medical records show that he was continuously treated for his hernia. The Angola physician noted that plaintiff's condition did not usually warrant surgery, but that given the alleged pain associated with it, he was referred to a surgeon. Surgery was provided in December 2017. As such, the effect of the DOC policy was not deliberate indifference. See *McBarron v. Fed. Bureau of Prisons*, 332 F. App'x 961, 964 (5th Cir. 2009)(holding that defendants were not deliberately indifferent where the inmate's complaints were not ignored, that he was given pain medication, and that surgery was approved once it became medically necessary); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992) (No deliberate

indifference where plaintiff was continuously treated for his back pain; continuing back pain, while unpleasant, does not demonstrate that a constitutional violation occurred).

Defendants did not refuse to treat plaintiff, ignore his complaints, intentionally treat him incorrectly, or engage in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Plaintiff's hernia was evaluated and when it was determined that surgery was needed, plaintiff received surgery. The medical decision to manage the hernia non-operatively does not constitute deliberate indifference. Failure to refer an inmate for additional treatment is a matter of medical judgment and will not be second guessed in the context of a deliberate indifference claim. *Bagneris v. Collins*, No. CV 14-0724, 2016 WL 1122995, at *2 (M.D. La. Mar. 7, 2016), *report and recommendation adopted*, No. CV 14-724-SDD-EWD, 2016 WL 1189336 (M.D. La. Mar. 22, 2016).

Further, plaintiff cannot show that the alleged delay resulted in substantial harm. Mere delay in receiving care is not in and of itself a constitutional violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). In fact, in order to maintain a viable claim for delayed medical treatment there must have been deliberate indifference, which results in harm. *Id.* Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. *Wilson*, 501 U.S. at 298. Courts have held that a plaintiff is required to prove a "a life-long handicap or permanent loss" that is sufficient to constitute a serious medical need for constitutional purposes. See *Hill v. Dekalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)(overruled on other grounds) (citing *Monmouth County v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'); *Henderson v. Tanner*, No. CV 15-804-SDD-EWD, 2019 WL 885914, at *6 (M.D. La. Feb. 22, 2019)

(finding that plaintiff failed to establish that worsening of his condition from Stage 3 Fibrosis to Stage 4 Cirrhosis constitutes a "life-long handicap or permanent loss.").

There is no evidence that non surgical treatment of plaintiff's reducible hernia caused substantial harm.  Plaintiff received surgery and had his hernia repaired when it was medically appropriate. There are no genuine issues of material fact and summary judgment should be granted.

ii.   **Plaintiff's work assignment did not constitute deliberate indifference**

Plaintiff alleges that Defendants acted with deliberate indifference when they required plaintiff to perform physical labor that constituted a danger to his life and health, and which was unduly painful. Only if prison officials knowingly put an inmate on a work detail which they knew would significantly aggravate a serious physical ailment, such a decision would constitute deliberate indifference to serious medical needs. *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). The fact that a prison requires an inmate to work does not raise a constitutional claim for deliberate indifference. See *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993). Further, an inmate's disagreement with his medical classification does not state a constitutional claim. See *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir.1992).

Here, plaintiff alleges that his job as a dorm orderly constituted deliberate indifference. At Angola, the job functions for a janitorial/cleaning and dorm orderly include basic janitorial duties like sweeping, mopping, dusting, wiping walls and counters.[49] There is no evidence to support plaintiff's claim that his job assignment required him to perform physical labor that constituted a danger to his life and health. Further, there is no evidence that defendants were aware that a job

---

[49] Exhibit F, Affidavit of Amber Vittorio; Exhibit E, Location Sheet.

-19-

assignment as a dorm orderly would significantly aggravate a serious physical ailment. Further, plaintiff was given a duty status of no lifting over 10 pounds as well as no right upper quadrant overhead work.[50] As such, this claim should be dismissed.

> **B.  In the Alternative, Defendants Are Entitled to Qualified Immunity in Their Personal Capacities**

Under the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from civil liability for damages if their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Flores v. City of Palacios*, 381 F.3d 391, 393-394 (5th Cir. 1984). The qualified immunity defense affords government officials not just immunity from liability, but immunity from suit. *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985)). Qualified immunity allows officials the freedom to exercise fair judgment, protecting "all but plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Actions and decisions made by officials that are merely inept, erroneous, ineffective or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. *Alton v. Texas A&M University*, 168 F.3d 196, 201 (5th Cir. 1999). The defense of qualified immunity must be resolved at the earliest possible stage of litigation since it entails an immunity from suit and entitlement not to stand trial or face other burdens of litigation. *Pearson v. Callahan* 555, U.S. 223, 232 (2009).

The qualified immunity defense has two prongs: (1) whether an official's conduct violated a constitutional right of the plaintiff; and (2) whether the right was clearly established at the time

---

[50] Exhibit A, Affidavit of Dr. Lavespere; Exhibit A-1, Medical Records, Bates # 015763;

of the violation. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir.2009). A court may rely on either prong of the defense in its analysis. *Id.* If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action."   *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir.2004) (citations omitted). To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir.2008). In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994).

Although a plaintiff need not find "a case directly on point, ... existing precedent must have placed the ... constitutional question beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741. That is, existing precedent must have replaced beyond debate the unconstitutionality of  the officials' actions, as those actions unfolded in the specific context of the case at hand. *Taylor*, 135 S.Ct. at 2044. Accordingly, the Supreme Court explained, "If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." *Wilson v. Layne*, 526 U.S. 603, 618, 119 S. Ct. 1692, 1701.

Given the foregoing doctrine, the question in this case must be: viewing the evidence in the light most favorable to plaintiff, at the time the defendants acted, was it "beyond debate" that their conduct violated the Constitution? If the answer is no– if the officials' actions did not clearly violate plaintiff's rights under the Eighth Amendment– then the officials are entitled to qualified immunity, and summary judgment must be entered in their favor. See *Hamby v. Hammond*, 821 F.3d 1085,

1092 (9th Cir. 2016).

Plaintiff's medical records show that he received numerous examinations and treatments from multiple doctors at LSP, and that the doctors found that his symptoms were not sufficiently serious enough to warrant surgery. As discussed above in Section 3(A), plaintiff cannot demonstrate that his rights were violated.

Even further, plaintiff cannot show that the alleged delay in surgery violated a "clearly established right." Numerous district and appellate courts have found that treating a reducible hernia through non-operative medical treatment instead of surgery was medically appropriate and was not a violation of one's constitutional rights. See *Barrett v. Mississippi Dep't of Corr.*, 427 Fed. Appx. 349, 350 (5th Cir. 2011)(holding that defendants' non-surgical treatment of hernia did not constitute deliberate indifference); *Cullum v. Texas Dep't of Criminal Justice*, 375 F. App'x 417, 419 (5th Cir. 2010)(upholding the granting of summary judgment as to plaintiff's deliberate indifference claim where the delay in hernia surgery was two and one-half years); *Jones v. Schmidt*, No. CIV.A. 13-685-JJB, 2014 WL 6772493, at *4 (M.D. La. Dec. 1, 2014)(" [A]lthough the plaintiff apparently believes that surgery is appropriate for his condition, courts have often found that a failure to undertake surgical intervention for a reducible hernia is not deliberate indifference to a serious medical need."); *Clark v. Adams*, 233 Fed. Appx. 400 (5th Cir.2007) (upholding the dismissal, as frivolous, of an inmate's claim regarding a failure to provide surgical intervention for a reducible hernia); *Hamby v. Hammond*, 821 F.3d 1085, 1093 (9th Cir. 2016)("it is at least debatable that the officials complied with the Eighth Amendment, because– to the extent they played any role in the decision to deny [inmate] surgery for his umbilical hernia–the record makes clear that they did so based on legitimate medical opinions that have often been held reasonable under the Eighth

Amendment."); *Jackson v. Jackson*, 456 Fed. Appx. 813, 814, (11th Cir. Ga. 2012)(finding that delay in hernia surgery was not deliberate indifference where the hernia remained treatable without surgery and did not pose of risk to inmate's health); and *Mesa v. Kasule*, 2013 WL 2151706 (E.D.Tex. May 15, 2013) (dismissing an inmate's claim regarding non-surgical treatment of his hernia as frivolous). See also *Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006)(finding that doctor's decision to treat inmate's reducible hernia by non surgical means was not deliberate indifference).

Because numerous courts have found that non-surgical treatment of a reducible hernia does not constitute deliberate indifference, it cannot be said that the right to hernia surgery for a reducible hernia is clearly established. Thus, under well settled jurisprudence, Singh, Edwards, LeBlanc, Vannoy, and Lamartiniere are entitled to qualified immunity for claims against them in their individual capacity.

### 3.  Plaintiff's ADA and RA Claims Fail

"The ADA is a federal anti-discrimination statute designed '[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 574 (5th Cir. 2002), quoting *Rizzo v. Children's World Learning Centers, Inc.*, 173 F.3d 254, 261 (5th Cir. 1999). The RA was enacted "to ensure that handicapped individuals are not denied jobs or other benefits because of prejudiced attitudes or ignorance of others."  *Brennan v. Stewart*, 834 F.2d 1248, 1259 (5th Cir.1988). The language in the ADA generally tracks the language set forth in the RA. In fact, the ADA expressly provides that "[t]he remedies, procedures and rights" available under the RA are also accessible under the ADA. 42 U.S.C. § 12133 (1995). Thus, "[j]urisprudence interpreting either

-23-

section is applicable to both." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir.2000).

Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In order to establish a violation of the ADA, a plaintiff must demonstrate:  (1) that he is a qualified individual within the meaning of the Act, (2) that he is being excluded from participation in or being denied the benefits of services, programs, or activities for which the defendants are responsible, or is otherwise being discriminated against by the defendants, and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir.1997). A plaintiff asserting a private cause of action for violations of the ADA or the RA may only recover compensatory damages upon a showing of intentional discrimination. *Carter v. Orleans Parish Pub. Sch.*, 725 F.2d 261, 264 (5th Cir.1984).

The ADA envisions reasonable accommodations for disabled individuals to ensure that the disabled individual is not denied benefits of the programs, services or activities of a public entity. 42 U.S.C. § 12132.  Plaintiff alleges that defendants "defined a class of individuals with disabilities (those with reducible hernias) and ordered that they receive different services than other inmates (their hernias would be "managed non-operatively")." R.Doc. 56 ¶ 102.

### A.    Plaintiff Does Not Have A Disability As Defined Under the ADA

Plaintiff alleges that he is a person with a disability and that his "disability prevents him from engaging in major life activities like ambulating without pain." R.Doc. 56 ¶ 43. Plaintiff has no factual support for this allegation.

Under the ADA, the term "disability" means, with respect to an individual: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C.A. § 12102. A major life activity includes caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C.A. § 12102. Plaintiff's medical records show that his reducible hernia does not meet this definition, as they do not indicate that plaintiff was complaining of extreme pain which may have substantially limited a major life activity. As such, plaintiff does not have a disability within the meaning of the ADA.

**B.     Plaintiff Cannot Show that He Was Discriminated Against By Reason of His Disability**

Even if plaintiff's hernia was considered as disability, which is denied, plaintiff cannot show that he was excluded from participation in or denied the benefits of services, programs, or activities, or was otherwise discriminated against by the defendants.

Courts routinely hold that when a plaintiff's core complaint is incompetent treatment for his underlying medical condition, such a complaint does not state a claim for relief under the ADA because "[t]he ADA does not create a remedy for medical malpractice." *Brown v. Wilson*, 2012 WL 6719464, *3 (N.D. Tex. Dec. 27, 2012). The ADA prohibits discrimination because of disability, not inadequate treatment for disability. Further, the ADA is not violated by a prison failing to attend to the medical needs of its disabled prisoners. *George v. Louisiana Dep't of Pub. Safety & Corr.*, No. CV31400338JWDEWD, 2016 WL 3568109, at *10 (M.D. La. June 23, 2016).

In *Giovanni v. Cain*, No. CIV.A. 13-00566-BAJ, 2015 WL 1085827, at *6 (M.D. La. Mar.

-25-

11, 2015), this Court held, in a similar case where an inmate alleged an ADA violation regarding his hernia, "[P]laintiff's allegations regarding his medical care and the generalized conditions to which he and other inmates have been subjected in the LSP housing units do not suggest that he has been denied any services, programs or activities or that such denial has been by *reason* of such disability." See also, *Burns v. Calcasieu Corr. Ctr. Med. Dep't*, No. 14-CV-2261, 2015 WL 8064652, at *6 (W.D. La. June 17, 2015), report and recommendation adopted, No. 14-CV-2261, 2015 WL 8079153 (W.D. La. Dec. 4, 2015)("The alleged deprivation in this case relates to the defendants' failure to provide adequate medical care but there is no allegation that that failure resulted from discrimination on account of plaintiff's disability").

Plaintiff's allegation that defendants treat inmates with reducible hernias differently simply does not rise to discrimination under the ADA. The decision whether to refer an inmate to a surgeon is purely a medical one. The prevailing medical opinion is that reducible hernias can be treated non operatively.[51] Thus no discrimination occurs when a physician determines that a hernia should be treated non-operatively. Plaintiff's ADA claim should be dismissed.

## IV.   CONCLUSION

Plaintiff's § 1983 claims fail, because the claims are prescribed, the policy at issue did not violate plaintiff's constitutional rights, and plaintiff has no evidence to support his dangerous work assignment claim. Plaintiff's ADA claims should be dismissed, as plaintiff does not have a disability under the ADA and further cannot show any discrimination. Defendants pray that this motion be granted, dismissing plaintiff's claims with prejudice.

---

[51]Deposition of Dr. Singh, p. 51-52; *Davis v. Singh*, No. 16-0552, attached as Exhibit D.

Respectfully submitted,

**JEFF LANDRY**
**Attorney General**

By:_____s/Andrew Blanchfield_____
        Andrew Blanchfield, T.A. (#16812)
        Email: ablanchfield@keoghcox.com
        C. Reynolds LeBlanc (#33937)
        Email: rleblanc@keoghcox.com
        Chelsea A. Payne (#35952)
        Email: cpayne@keoghcox.com
        Special Assistant Attorneys General
        701 Main Street (70802)
        Post Office Box 1151
        Baton Rouge, Louisiana  70821
        Telephone:  (225) 383-3796
        Facsimile:  (225) 343-9612

### CERTIFICATE OF SERVICE

I hereby certify that I have this date electronically filed the foregoing with the Clerk of Court by utilizing the CM/ECF system, and a copy of the above and foregoing was this day forwarded by the Court's ECF Delivery System to all counsel of record.

Baton Rouge, Louisiana, this 17th day of April 2019.

_____s/Andrew Blanchfield_____
       Andrew Blanchfield