### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **EARL PETERS, IDDO BLACKWELL,** | * | **CIVIL ACTION** |
| **KEVIN MATHIEU, LAVELLE** | * | |
| **MEYERS, DAN RILEY, RUSSELL** | * | |
| **WARE** | * | **NUMBER: 3:16-cv-00842-SDD-RLB** |
| | * | |
| **VERSUS** | * | |
| | * | **JUDGE SHELLY D. DICK** |
| **RAMAN SINGH, JOHN BEL** | * | |
| **EDWARDS, JAMES M. LEBLANC,** | * | |
| **STEPHANIE LAMARTINIERE,** | * | **MAGISTRATE** |
| **DARRYL VANNOY, STATE OF** | * | **RICHARD L. BOURGEOIS** |
| **LOUISIANA, LOUISIANA** | * | |
| **DEPARTMENT OF PUBLIC SAFETY** | * | |
| **AND CORRECTIONS** | * | |

**************************************************************************

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON CLAIMS RELATED TO CATARACT TREATMENT OF PLAINTIFF ROSS MCCAA

NOW INTO COURT, through undersigned counsel, come Defendants, State of Louisiana, Louisiana Department of Public Safety and Corrections, John Bel Edwards, in his capacity as Governor of Louisiana, James LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections, Darryl Vannoy, Warden at Angola, Raman Singh, and Stephanie Lamartinere, Assistant Warden at Angola, who, pursuant to Federal Rule of Civil Procedure 56, move to dismiss Ross McCaa's claims related to cataract treatment.[1]

## I.    FACTUAL BACKGROUND

At all times pertinent herein, Ross McCaa was an inmate sentenced to the custody of the Louisiana Department of Public Safety and Corrections and was confined to the Louisiana State Penitentiary in Angola. McCaa, among other plaintiffs, filed this instant suit against defendants

---

[1] Plaintiff also brings claims related to treatment of his hernia, which is addressed in a separately filed motion for summary judgment.

alleging violations of the Eighth Amendment and Americans with Disabilities Act concerning treatment of his cataracts.

Plaintiff first complained of blurry vision, which was reportedly worse with seeing at a distance on February 1, 2011, during his annual physical exam.  He was to be referred to the Ophathalmology Department.[2] Throughout 2012, plaintiff was seen several times by LSU and an outside physician for a chronic skin conditions.  On November 5, 2012, plaintiff was seen at the Angola Eye Clinic. A cataract in the right eye was noted to be greater than in the left eye, with a trace cataract noted in the left eye.[3] His visual acuity was 20/25 in both eyes.[4] Plaintiff received state issued eye glasses on December 1, 2013.[5] On December 11, 2013, Plaintiff refused his appointment at the Eye Clinic.[6]

Plaintiff was seen on April 30, 2014 at the Angola Eye Clinic.  He was noted to have a cataract in the right eye, however, the cataract was not visually significant.[7] Plaintiff was seen on September 29, 2014, at the Angola Eye Clinic.  It was noted that Plaintiff had a trace cataract in the

---

[2]  Exhibit A, Affidavit of Dr. Randy Lavespere, Exhibit A-1, Medical Records, Bates #017121;

[3] Exhibit A, Affidavit of Dr. Randy Lavespere, Exhibit A-1, Medical Records, Bates #017437;

[4] Exhibit A, Affidavit of Dr. Randy Lavespere, Exhibit A-1, Medical Records, Bates #021580;

[5] Exhibit A, Affidavit of Dr. Randy Lavespere, Exhibit A-1, Medical Records, Bates #021578;

[6] Exhibit A, Affidavit of Dr. Randy Lavespere, Exhibit A-1, Medical Records, Bates #017091;

[7] Exhibit A, Affidavit of Dr. Randy Lavespere, Exhibit A-1, Medical Records, Bates #017441;

left eye and a dense, cortical cataract in the right eye.  Plaintiff's best corrected visual acuity was noted to be 20/30 in the right and 20/20 in the left eye.[8]

Plaintiff was seen numerous times by Angola physicians in 2015, and had no complaints concerning his cataracts. On October 19, 2016, Plaintiff was seen  at the Angola Eye Clinic due to cataract and hypertension.  Plaintiff's visual acuity was noted to be 20/20 in both eyes.  There was a trace cataract in the left eye and a dense, cortical cataract in the right eye.  Plaintiff was also noted to have arcus senilis in both eyes.[9] Plaintiff was given a glasses prescription on December 14, 2016.[10] Plaintiff underwent a repair on his hernia in 2017, and had no other complaints of his cataracts.

On October 1, 2017, Plaintiff was given a new prescription for eye glasses.[11] On October 4, 2017, Plaintiff was seen at the Angola Eye Clinic and was noted to have early Arcus as well as cataracts, greater in the right eye than in the left eye.[12] His visual acuity was noted to be 20/40 in both eyes. To date, there has been no referral for surgical evaluation, as a referral was not warranted.

---

[8]  Exhibit A, Affidavit of Dr. Randy Lavespere, Exhibit A-1, Medical Records, Bates #017433;

[9] Exhibit A, Affidavit of Dr. Randy Lavespere, Exhibit A-1, Medical Records, Bates #017429;

[10] Exhibit A, Affidavit of Dr. Randy Lavespere, Exhibit A-1, Medical Records, Bates #017427;

[11]  Exhibit A, Affidavit of Dr. Randy Lavespere, Exhibit A-1, Medical Records, Bates #021579;

[12] Exhibit A, Affidavit of Dr. Randy Lavespere, Exhibit A-1, Medical Records, Bates #021580;

## II.    LAW AND ARGUMENT

### A.    Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Robinson v. Wheeler*, 338 F. App'x 437, 438 (5th Cir. 2009); See also F.R.C.P. 56.  A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  Once the moving party has demonstrated the absence of a material fact issue, the non-moving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.  *Boudreaux v. Swift Transpo. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005). This burden is not satisfied by some metaphysical doubt as to the material fact, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Id.*

Applying the summary judgment standard warrants a dismissal of plaintiff's claims. There are no genuine issues of fact that plaintiff's disagreement with his medical care does not constitute deliberate indifference, and that plaintiff does not have a claim under the ADA. Defendants are entitled to judgment as a matter of law.

### B.    Plaintiff's Deliberate Indifference Claim Fails

#### 1.    The Treatment of Plaintiff's Cataracts Was Constitutionally Appropriate

It is well-settled that to prevail on an Eighth Amendment claim for the deprivation of medical care, a prisoner must be able to show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."    *Thomas v. Carter*, 593 Fed. Appx.

-4-

338, 342 (5th Cir.2014), citing *Estelle v. Gamble*, 429 U.S. 97 (1976). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue because a prisoner's mere disagreement with his medical treatment, absent exceptional circumstances, does not support a claim of deliberate medical indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir.2006). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. *Bagneris v. Collins*, No. CV 14-0724, 2016 WL 1122995, at *3 (M.D. La. Mar. 7, 2016), *report and recommendation adopted*, No. CV 14-724-SDD-EWD, 2016 WL 1189336 (M.D. La. Mar. 22, 2016). The Fifth Circuit has held that 'deliberate indifference is especially hard to show when the inmate was provided with ongoing medical treatment.' " *Henderson v. Tanner*, No. CV 15-804-SDD-EWD, 2019 WL 885914, at *5 (M.D. La. Feb. 22, 2019), quoting *Fails v. DeShields*, 349 F. App'x 973, 976 (5th Cir. 2009).

Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 83930 (1994). A prison official acts with deliberate indifference only if the official (1) "knows that inmates face a substantial risk of serious bodily harm," and (2) "disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, 463 F.3d at 346, quoting *Farmer v. Brennan*, 511 U.S. at 847.

The deliberate indifference standard sets a very high bar. The plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), quoting *Estelle v. Gamble*, supra. Further, a mere delay in providing medical treatment

does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir.2006), citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993).

In order for a prison official to be found liable under § 1983, the official must be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be shown to be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or respondeat superior is alone insufficient to state a claim under § 1983. In the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. Supervisory liability can be found to exist if a supervisory official implements a policy so deficient that the policy itself may be seen to be a repudiation of constitutional rights and may be seen to be the moving force behind a constitutional violation. *Thompkins v. Belt,* 828 F.2d 298 (5th Cir. 1987).

Here, plaintiff alleges that he was recommended for surgery for his left eye cataracts in 2012, and that defendants denied the surgery. However, the medical records show that plaintiff was never recommended for cataract surgery by a surgeon. Plaintiff's medical records indicate that plaintiff's cataracts in both eyes were *visually insignificant*. The worst visual acuity in plaintiff's eyes were 20/40 in 2018. There is no evidence that cataract surgery was warranted, nor that the medical

decision to not refer plaintiff for cataract surgery was deliberately indifferent. Defendants did not refuse to treat plaintiff, ignore his complaints, or intentionally treated him incorrectly. On the contrary, plaintiff's medical condition was continuously monitored.

Plaintiff alleges that cataracts surgeries are deemed elective and this somehow violates the constitution. Plaintiff was not referred for surgery because his visually insignificant cataracts did not warrant surgery. The decision to not refer plaintiff to surgery by the outside surgeon was solely based on medical judgment, which will not be second guessed in the context of a deliberate indifference claim. *Bagneris v. Collins*, No. CV 14-0724, 2016 WL 1122995, at *2 (M.D. La. Mar. 7, 2016), report and recommendation adopted, No. CV 14-724-SDD-EWD, 2016 WL 1189336 (M.D. La. Mar. 22, 2016). The fact that cataract surgery may be deemed elective does not change the fact that plaintiff's surgery was not medically necessary.

Further, plaintiff cannot show that the alleged delay resulted in substantial harm. Mere delay in receiving care is not in and of itself a constitutional violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). In fact, in order to maintain a viable claim for delayed medical treatment there must have been deliberate indifference, which results in harm. *Id.* Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. *Wilson*, 501 U.S. at 298. Courts have held that a plaintiff is required to prove a "a life-long handicap or permanent loss" that is sufficient to constitute a serious medical need for constitutional purposes. See *Hill v. Dekalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)(overruled on other grounds) (citing *Monmouth County v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'); *Henderson v. Tanner*, No. CV 15-804-SDD-EWD, 2019 WL 885914, at *6 (M.D. La. Feb. 22, 2019)

(finding that plaintiff failed to establish that worsening of his condition from Stage 3 Fibrosis to Stage 4 Cirrhosis constitutes a "life-long handicap or permanent loss.").

There is no evidence that the alleged delay caused substantial harm. There are no genuine issues of material fact and summary judgment should be granted.

### 2.    Plaintiff's Work Assignment Did Not Constitute Deliberate Indifference

Plaintiff alleges that Defendants acted with deliberate indifference when they required plaintiff to perform physical labor that constituted a danger to his life and health, and which was unduly painful.

Only if prison officials knowingly put an inmate on a work detail which they knew would significantly aggravate a serious physical ailment, such a decision would constitute deliberate indifference to serious medical needs. *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). The fact that a prison requires an inmate to work does not raise a constitutional claim for deliberate indifference. See *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993). Further, an inmate's disagreement with his medical classification does not state a constitutional claim. See *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir.1992).

Plaintiff's records indicate that from 2013-2018, plaintiff's job assignments were a laundry worker and a groundskeeper. TC grounds keeper, MP PM laundry, TC orderly and dorm orderly/janitor/cleaner.[13] At Angola, the TC groundskeeper is assigned to the treatment center as an outside orderly. The inmate's duties include cutting grass, weed eating, cleaning sidewalks, cleaning the building, and basically maintaining the outside appearance of an area.[14] A laundry worker

---

[13] See Exhibit D, Location Sheet.

[14] Exhibit E, Affidavit of Amber Vittorio.

washes, dries and delivers laundry.[15] There is no evidence that plaintiff's job assignments would significantly aggravate plaintiff's visually *insignificant* cataracts, or create a danger to his health. Thus, the claim should be dismissed.

### 3. Plaintiff's Claims Against Defendants in Their Individual Capacity Must be Dismissed Because Plaintiff Cannot Show Personal Involvement

In order to establish the personal liability of a certain defendant to a plaintiff who is claiming damages for deprivation of his civil rights, that plaintiff must show that particular defendant's action or inaction was a violation of the plaintiff's civil rights. *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 1098 n. 7, 89 L.Ed.2d 271 (1986)). Overall, "[p]ersonal involvement is an essential element of a civil rights cause of action. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.1 983). "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). Instead, a supervisory official may be held liable under section 1983 only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury. *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). The Fifth Circuit has held that "[s]upervisory liability may also exist without overt personal participation in the offensive act if the supervisory official 'implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'" *Walker v. Nunn*, 456 F. App'x 419, 424 (5th Cir. 2011).

Plaintiff makes general and conclusory allegations that "Defendants implemented a policy of not scheduling or paying for surgery." R.Doc. 56, ¶ 110. Plaintiff has not identified a specific

---

[15] Exhibit E, Affidavit of Amber Vittorio.

policy, nor has he alleged any specific defendant's involvement in such a policy. Moreover, there

is no evidence that such a policy exists or that plaintiff's medical care was governed by such a

policy. Plaintiff's was not given a recommended for surgery evaluation because it was not medically

necessary.

Further, the DOC Cataract Referral Guidelines provide that an inmate should be referred to

special care if there is symptomatic, slow, progressive, painless decrease in vision that affects

activities of daily living.[16] The Guidelines also provide inmates will visual acuities of 20/40 or better

may be followed by the Angola physicians, and not referred for surgery.[17] These Guidelines were

followed in this case, as plaintiff's worst visual acuity was 20/40 in 2018; thus he was followed by

Angola physicians and not referred for surgery. Plaintiff cannot identify any policy that violates the

constitution, nor can he show any personal involvement of any of the defendants.

### 4. In the Alternative, Defendants Are Entitled to Qualified Immunity

Under the doctrine of qualified immunity, government officials acting within their

discretionary authority are immune from civil liability for damages if their conduct does not violate

clearly established constitutional rights of which a reasonable person would have known. *Flores v.

City of Palacios*, 381 F.3d 391, 393-394 (5th Cir. 1984). The qualified immunity defense affords

government officials not just immunity from liability, but immunity from suit. *Vander Zee v. Reno*,

73 F.3d 1365, 1368 (5th Cir. 1996) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985)).

Qualified immunity allows officials the freedom to exercise fair judgment, protecting "all but plainly

incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

---

[16] Exhibit C, Cataract Guidelines; Exhibit B, Deposition of Dr. Lavespere, p. 54-55.

[17] *Id.*

Actions and decisions made by officials that are merely inept, erroneous, ineffective or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. *Alton v. Texas A&M University*, 168 F.3d 196, 201 (5th Cir. 1999). The defense of qualified immunity must be resolved at the earliest possible stage of litigation since it entails an immunity from suit and entitlement not to stand trial or face other burdens of litigation. *Pearson v. Callahan* 555, U.S. 223, 232 (2009).

The qualified immunity defense has two prongs: (1) whether an official's conduct violated a constitutional right of the plaintiff; and (2)  whether the right was clearly established at the time of the violation. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir.2009). A court may rely on either prong of the defense in its analysis. *Id.* If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action."   *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir.2004) (citations omitted). To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir.2008). In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994).

Although a plaintiff need not find "a case directly on point, ... existing precedent must have placed the ... constitutional question beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741. That is, existing precedent must have replaced beyond debate the unconstitutionality of  the officials' actions, as those actions unfolded in the specific context of the case at hand. *Taylor*, 135 S.Ct. at

2044. Accordingly, the Supreme Court explained, "If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." *Wilson v. Layne*, 526 U.S. 603, 618, 119 S. Ct. 1692, 1701.

Given the foregoing doctrine, the question in this case must be: viewing the evidence in the light most favorable to plaintiff, at the time the defendants acted, was it "beyond debate" that their conduct violated the Constitution? If the answer is no– if the officials' actions did not clearly violate plaintiff's rights under the Eighth Amendment– then the officials are entitled to qualified immunity, and summary judgment must be entered in their favor. See *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016).

Plaintiff was routinely seen for his cataracts at LSP. As discussed above, there as no surgical referral because it was not medically necessary for a visually insignificant cataracts. Thus, plaintiff cannot demonstrate that his rights were violated.

Even further, plaintiff cannot show that the failure to provide surgery violated a "clearly established right." The law is clear that medical opinion is controlling and will not be second guessed under a deliberate indifference standard. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) ("the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'"). Plaintiff was not referred to surgery, which was based on medical judgment. Thus, no clearly established rights were violated. See *Clark v. Adams*, 233 F. App'x 400, 401 (5th Cir. 2007) (finding that an inmate's allegation that a prison doctor should have referred him to corrective surgery did not amount to deliberate indifference, because the decision to provide additional treatment is a matter of medical judgment); see also *Samonte v. Bauman*, 264 F. App'x 634, 636 (9th Cir. 2008) (medical director's refusal to authorize cataract surgery after another doctor determined

that such surgery was an option was a "difference of medical opinion," insufficient by itself to raise

a triable issue of deliberate indifference, especially given that the inmate the doctors routinely saw

him to monitor his condition); *Dupuis v. Caskey*, No. 4:08CV63–LRA, 2009 WL 3156527, at *4

(S.D.Miss. Sept. 28, 2009) (finding no deliberate  indifference because cataract surgeries are

considered elective (citing the American Optometric Association's Optometric Clinical Practice

Guidelines)).

Because plaintiff cannot show a violation of a clearly established right, defendants are

entitled to qualified immunity.

### 5.      Plaintiff's ADA and RA Claims Fail

"The ADA is a federal anti-discrimination statute designed '[t]o provide a clear and

comprehensive national mandate for the elimination of discrimination against individuals with

disabilities.'" *Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 574 (5th Cir. 2002), quoting

*Rizzo v. Children's World Learning Centers, Inc.*, 173 F.3d 254, 261 (5th Cir. 1999). The RA was

enacted "to ensure that handicapped individuals are not denied jobs or other benefits because of

prejudiced attitudes or ignorance of others." *Brennan v. Stewart*, 834 F.2d 1248, 1259 (5th

Cir.1988). The language in the ADA generally tracks the language set forth in the RA. In fact, the

ADA expressly provides that "[t]he remedies, procedures and rights" available under the RA are also

accessible under the ADA. 42 U.S.C. § 12133 (1995). Thus, "[j]urisprudence interpreting either

section is applicable to both." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir.2000).

Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason

of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42

U.S.C. § 12132. In order to establish a violation of the ADA, a plaintiff must demonstrate:  (1) that he is a qualified individual within the meaning of the Act, (2) that he is being excluded from participation in or being denied the benefits of services, programs, or activities for which the defendants are responsible, or is otherwise being discriminated against by the defendants, and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir.1997). A plaintiff asserting a private cause of action for violations of the ADA or the RA may only recover compensatory damages upon a showing of intentional discrimination. *Carter v. Orleans Parish Pub. Sch*., 725 F.2d 261, 264 (5th Cir.1984).

The ADA envisions reasonable accommodations for disabled individuals to ensure that the disabled individual is not denied benefits of the programs, services or activities of a public entity. 42 U.S.C. § 12132.  Plaintiff claims that defendants subjected him to discrimination when: (1)  they refused to provide him with cataract surgery; (2) they failed to make a reasonable accommodation in their policies necessary to avoid discrimination; and (3) plaintiff was denied participation in a prison job due to his medical situation.. R.Doc. 56, ¶ 103.

### a.    Plaintiff Did Not Have a Disability Under the ADA

Under the ADA, the term "disability" means, with respect to an individual: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C.A. § 12102. A major life activity includes caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C.A. § 12102. There is no evidence

-14-

that plaintiff's visually insignificant cataracts, substantially limited a major life activity as defined under the ADA.

      **b.**    **Plaintiff Cannot Show that He Was Discriminated Against By Reason of His Disability**

Even if plaintiff's cataracts were considered as disability, which is denied, plaintiff cannot show that he was excluded from participation in or denied the benefits of services, programs, or activities, or was otherwise discriminated against by the defendants. Plaintiff alleges that he was discriminated against when defendants refused to provide cataract surgery. However, courts routinely hold that when a plaintiff's core complaint is incompetent treatment for his underlying medical condition, such a complaint does not state a claim for relief under the ADA because "[t]he ADA does not create a remedy for medical malpractice." *Brown v. Wilson*, 2012 WL 6719464, *3 (N.D. Tex. Dec. 27, 2012). The ADA prohibits discrimination because of disability, not inadequate treatment for disability. Further, the ADA is not violated by a prison failing to attend to the medical needs of its disabled prisoners. *George v. Louisiana Dep't of Pub. Safety & Corr.*, No. CV31400338JWDEWD, 2016 WL 3568109, at *10 (M.D. La. June 23, 2016). Thus, plaintiff's conclusory allegations that he was discriminated against because he did not receive cataract surgery when he thought it was appropriate do not fall under the ADA.

## III.    CONCLUSION

There are no genuine issues of material facts and defendants are entitled to summary judgment. Plaintiff's medical care was at all times constitutionally appropriate. Plaintiff was not referred for cataract surgery on his visually insignificant cataracts because it was not medically warranted. Plaintiff cannot identify any policy or practice that constitutes deliberate indifference.

Finally, plaintiff's ADA claim fails, as plaintiff did not have a disability, and was not discriminated

by reason of any disability. Defendants pray that their motion be granted, dismissing plaintiff's

claims with prejudice.

Respectfully submitted,

**JEFF LANDRY**
**Attorney General**

By:     s/Andrew Blanchfield
        Andrew Blanchfield, T.A. (#16812)
        Email: ablanchfield@keoghcox.com
        C. Reynolds LeBlanc (#33937)
        Email: rleblanc@keoghcox.com
        Chelsea A. Payne (#35952)
        Email: cpayne@keoghcox.com
        Special Assistant Attorneys General
        701 Main Street (70802)
        Post Office Box 1151
        Baton Rouge, Louisiana  70821
        Telephone:  (225) 383-3796
        Facsimile:  (225) 343-9612

## CERTIFICATE OF SERVICE

I hereby certify that I have this date electronically filed the foregoing with the Clerk of Court by utilizing the CM/ECF system, and a copy of the above and foregoing was this day forwarded by the Court's ECF Delivery System to all counsel of record.

Baton Rouge, Louisiana, this 29th day of April, 2019.

        s/Andrew Blanchfield
        Andrew Blanchfield